May it please the Court, my name is Mark Caldwell. I'm here representing Ms. Williams this morning in the Social Security case. It must be Phoenix Day. Yes, good to see you again. I was here Wednesday. This case has two dispositive issues, in my opinion. One is the consultative examination by Dr. Watkins, and the other, of course, is the claimant's symptom testimony, both of which resulted in vocational expert testimony that a person so limited could not work. Because I argued a case in front of two of you on Wednesday, I want to make a distinction here, because obviously on Wednesday I was saying, well, you shouldn't pay any attention to the consultative examiner because he didn't do a good job. And now I'm saying, please pay attention to the consultative examiner. That's why my client should win the case. There's a big difference, however. Every case has its own facts, right? Yes, yes. Okay. So that's ‑‑ there's a big difference, obviously. Here there were no background records to review in terms of the mental health treatment that did occur subsequently. And I think Dr. Watkins is ‑‑ did a very thorough job. He had a four-page, single-spaced, typewritten report where he talked about the reasons for why he was giving the limitations. This is in my brief. It's pretty clear. But the ALJ is entitled to resolve conflicts in the evidence only when there are conflicts in the evidence. And here the assessment form that Dr. Watkins gave specific limitations tracks almost word for word, and if you look at the side-by-side chart I have in my brief, what he had in his narrative report. So, you know, you can resolve a conflict only if there is one. And in this case there isn't a conflict. So that reason for the judge discounting the significant limitations that the vocational experts said would preclude work goes out the window. The other reason the ALJ gave was, well, you know, with subsequent treatment, Ms. Williams improved. This is factually not true. There's two replies to that. Number one, if she did improve, that doesn't mean Dr. Watkins was wrong at the time that he said what he said. It might indicate a closed period or something along that line. Of course, we already have a closed period because Ms. Williams reapplied and she was put on benefits, I think, a couple days after the ALJ decision that we're talking about now. But more importantly, there's no support in the record for an argument that Ms. Williams improved subsequently. As a matter of fact, toward the end of the treatment records that we have before us, she tried to commit suicide. I was looking at a the suicide attempt was in May of 2005. And I was looking at this August 2005, the last treatment record, which stated that your client said she was doing all right but was feeling just a little nervous and then was prescribed Paxil for dysmic disorder, if I'm saying that right, and sleep medication. And that was with the statement she was planning to apply for classes. Doesn't that support that there was an upturn at that point? Keep reading, Judge. You're on page 176 of the excerpts of record, the bottom center page number. And after she says feels okay, just a little nervous, here's what the evaluator said. And, by the way, remember the evaluator here appears to be a social worker of some sort. Claimant seems depressed, low in energy. Her speech was slow and low in tone, under stress and tension, et cetera. So, you know, as I so often point out in these cases, and as this Court has said time and time and time again, you cannot support an administrative law judge's decision by isolating a specific quantum of supporting evidence. In my Rule 28 letter, I cited the most recent case that said that. I think it was Ryan. So, you know, you have to look at the whole thing. I have to say there was a problem with the base numbering. I had so much trouble finding anything. It's the bottom center page number you look at, Judge. What's confusing is the district court transcript has a big old number in the top right-hand corner, and your eye tends to look at that. I can't do anything about that. That's the way it appears in the transcript. I'm powerless to delete it, even though it's confusing. So please look at the bottom center for your page numbers on the excerpts of record. Thank you. So to come back to my point, there's only two reasons the ALJ gave for discounting Dr. Watkins' assessment. Neither one of them hold water. So what is this Court to do? We now get to what's called the crediting is true rule. The Vasquez decision that I cited in my Rule 28 letter, and I know the Commissioner just filed a reply to it a couple days ago, says, well, you know, that's kind of up in the air in the Ninth Circuit. I submit that that's not true. The Vasquez decision talked about the Connick decision, where one panel of the Court said, we're not convinced that the crediting is true rule is mandatory in the Ninth Circuit. That's one sentence from that decision, and it confuses me. If you read the seminal case, Varney II, back in 1988, there's nothing nonmandatory about it. It's an extremely thorough, long decision that says here's exactly why we're going to adopt the Eleventh Circuit's crediting is true rule, and it is absolutely mandatory. Wasn't Varney II, though, in the excess pain? Sure. This is a mental health issue, so there seems to be there are some ways of objectively evaluating it, whereas I think our determination about excess pain is that there's no way to objectively evaluate it, and therefore, if we credit the person's testimony, there's nothing further to do. Why is that applicable in a mental health context like this one? The distinction is irrelevant, Judge, because what Varney II said, and this Court has obviously expanded upon Varney II since then, what Varney II says is once the improperly rejected evidence, when accepted as a matter of law, would clearly require an ALJ to enter a finding of disability, we will not remand for further proceedings. Now, you can fill in the line if you want to, major depressive disorder, pain, diabetic attacks, epileptic seizures, whatever you want, but the principle of Varney remains valid throughout. But has it, have we applied it in the mental health area? I can't remember the case. I mean, I know you have. I can only answer that I know you have, but the register won't bring up the case. If you want me to hit the books, I can do it, but I'm sure of it. I'm positive you've applied it in the mental health area. But let me come back with the minute I have remaining of my main argument. Here's the distinction with Conant. The Court's discretion is whether the rule should be applied, not whether, once the rule is applied, whether it's mandatory or not. The Court's discretion is to make the threshold determination once the improperly accepted evidence is credited as a matter of law, would the ALJ be required to enter a finding of disability? Once that question is answered, the result is mandatory. The key is also in the Lester and the Smolin cases when there are no further issues that must be resolved. And in this case, it applies head-on, because once Dr. Watkins' assessment or the claimant's testimony is accepted as a matter of law, there's no other finding that can be issued. I am up on my two minutes. I'd like to reserve it, if I may.  Thank you. Good morning, Your Honors. Nancy Leshefsky for the Commissioner of Social Security. In this case, the claimant didn't meet her burden to provide medical evidence suggesting disability or greater functional limitations than those found by the ALJ. There's no dispute in this case that the claimant had a severe impairment. The claimant's 13-year-old son committed suicide in 2003. She applied for benefits in 2003. In this case, the ALJ rationally interpreted the evidence and found that the claimant had the RFC, residual functional capacity, to perform simple, low-stress work that doesn't involve a lot of interaction with peers, excuse me, coworkers, or the public. Now, in making this determination, the ALJ looked at all of the evidence he had in front of him, and that included the consultant examination of Dr. Watkins. As Mr. Caldwell noted, there's a four-page narrative that is well-supported. There's also a two-page checkbox. When the ALJ later asked the vocational expert various hypothetical questions, the V.E. noted that under the narrative, the claimant could work. Under the checkbox, she couldn't. The ALJ found, looked at this, saw this inconsistency, and decided to give more weight to Dr. Watkins' narrative report. Now, if you read Dr. Watkins' narrative report, you'll also note that he thought that claimant would do better, that she had certain limitations that were not inconsistent with work, according to the V.E., but that she would do better with treatment. And in this case, he actually referred her to what I'm assuming is a free or low-cost provider called Value Options. So later, after Dr. Watkins' consultative report, claimant went to this treating provider, and the ALJ looked at these records and noted that there was no suggestion that claimant was disabled or had great functional limitations. In fact, the record is replete with evidence that either claimant was stable and that she should seek job training or employment. The problem I have with that is that all of that sort of input was around this fact that she tried to commit suicide, and so it seemed somewhat inconsistent with these findings of the medical, the post-Watkins medical providers. What are we supposed to make of that? Well, in this case, Your Honor, the ALJ, the treating physicians did not suggest disability. They did not suggest functional limitations. We can only, we, the ALJ actually could only go with what he had in front of him. In that case, they noted that at one point, claimant went in, went in to see her provider, said that she'd attempted suicide two weeks ago, not sought any medical attention. They talked to her. They didn't suggest that anything except that she make positive life changes. And we submit that under the circumstances, the ALJ rationally interpreted the evidence to determine that claimant was capable of this residual functional capacity and of alternative work. You know, I had some trouble with this. You know, it's always difficult in a suicide situation and particularly with the child, but to say she was getting better or had improved considerably since 2004, what is the specific evidence that that is tied to? Well, there are various things that the ALJ cites here, Your Honor. For example, I tend to look at the numbers at the top. There's pages 190 through 195, various suggestions that claim it was stable. There's also, I'd also note that in 2004, the first treating evidence, the first evidence from Dr. Watkins, he diagnosed major depressive disorder. However, the treating physicians later on were giving diagnosis of dysthymic disorder, which is chronic low-grade depression of a more mild type than major depressive disorder, and bereavement. In this case, the ALJ looked at what he had in front of him and made a reasonable determination, and no treating physician is suggesting greater limitations or actually any limitations. Did Drs. Campbell and Enos actually treat or simply review Watkins' records? They are non-examining State agency physicians, Your Honor, so no, they did not actually treat her. So the question I have about Watkins' evidence and what difference the fact that the ALJ gave less weight to his report is that it seems like the two halves of the Watkins reports cancel each other out. I mean, I did a chart. I couldn't see any material inconsistency between the narrative and the checklist. I know you identified one, but it didn't seem to me to be a material difference. But since the vocational, the V.E. expert said, well, if I look at it one way, she's disabled. If I look at it another way, she's not. I mean, I'm not sure how that even cuts. I mean, it's sort of in my mind it cancels itself out. So what we have left, really, is her testimony that all I can do is lie on the bed and watch television or look at the wall. And I think what the opposing counsel is saying is, well, in light of the record, the ALJ was required to take that or were required to take that testimony as true because the vocational expert said, well, if that is the case, she can't work at all. I mean, that's pretty obvious. Well, two things, Your Honor. First, as I noted in my 28J letter of a few days ago, there's a pending petition for a rehearing and bonk in Vasquez's case, which is all about crediting as true. So in the remote alternative that you would like to credit something as true, please stay that proceedings to see what happens with this on-bonk panel. In addition, if there ever was a case for crediting as true, I don't believe this is it for all sorts of reasons. The ALJ found the claimant partially credible. As we said, she went through something that was really horrible and had functional limitations based on that. But the ALJ was pointing out various things to suggest that in spite of that, she could perform a certain level of low-stress work. He noted all sorts of things, partially the improvement and the various things that were in the various notes, medical record. He also noted that the claimant was capable of self-care, that she had a roommate, she was visiting family, she wasn't completely isolated. And in this case, we believe that substantial evidence supports the ALJ's interpretation. And in this case, he made a rational interpretation. Even as far as with vocational expert testimony with the checkbox versus the narrative, the ALJ didn't come up with the fact that the ALJ asked the vocational expert two different questions. Under one, the vocational expert said the woman could work, and under the next, she said that she couldn't. So the ALJ had a rational basis for considering those differences. And we submit that where there's more than one rational way of interpreting the evidence, the ALJ is the fact finder, and his rational interpretation should control. If you don't have anything further, I'll submit on the briefs. Thank you. Thank you, Your Honors. I only have three points to make briefly. I'm so happy that I get to carry my library with me. The case that you remanded for mental impairments for payment of benefits is Regeniter, R-E-G-E-N-N-I-T-T-R versus Commissioner 166F3-1294, Ninth Circuit, 1999. And that was a mental impairments case where this Court remanded for payment of benefits. Thank you. Second and third points. There was a statement that the ALJ asked the vocational expert based upon Dr. Watkins' narrative report. It's not actually true. What the ALJ said was, here's the report, read it. And as I say in my brief, when the vocational expert answered the question, she answered the question based upon part of the narrative report, not all of it. Next to the last paragraph says, based on cognitive ability. But then the following paragraph says, but she's severely depressed, and for this reason she has these other limitations. And I cured that on cross-examination. I said, tell me, you know, what are the factors that you think preclude work? And then the vocational expert said, well, it's 1, 2, 3, and 4. And 1, 2, 3, and 4 appear on both the narrative report and the assessment form. Last point. There was a statement about the treating doctor subsequently didn't have a finding of disability. This court addressed that issue head-on in ORN, O-R-N versus Astru, 495F3-625 in 2007, where this court said in reply to that very argument, the purpose of medical records is to facilitate communication between health care professionals not to make a case for disability. So I think ORN addresses that. I will waive the remaining eight seconds of my time. Thank you. All right. We'll take back the eight seconds. Thank you very much to both counsel this morning for your arguments. The Williams versus the Social Security Administration is submitted.
judges: McKeown, Ikuta, Selna